Plaintiff has failed to establish by competent proofs its claimed classification, and hence has failed to overcome the presumption that the classification on liquidation was correct.

Inasmuch as we affirm the protested classification, we need not discuss the second claim, raised in plaintiff's brief but not in its protest, a claim which is dependent on our sustaining the protest claim. This we have not done.

The protest is overruled. Judgment will be entered accordingly.

(C.D. 4371)

Castelazo & Associates
Clear Beam Import-Export Co. } v. United States

United States Customs Court, Second Division

(Decided August 2, 1972)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*Harlington Wood, Jr.,* Assistant Attorney General (*Patrick D. Gill* and *James Caffentzis,* trial attorneys), for the defendant.

Before Rao, Ford, and Newman, Judges

Ford, Judge: The protests listed in schedule "A," annexed hereto and made a part hereof, were consolidated for the purpose of trial. The merchandise consists of rotary switches which are not dedicated to use with any particular article and are used in low-current circuits of no more than ½ ampere. They were classified under item 685.90, Tariff Schedules of the United States, which provides for electrical switches and other electrical apparatus for making or breaking electrical circuits, etc., and consequently assessed with duty at the rate of 17.5 per centum ad valorem.

Plaintiffs by amendment claim said merchandise is properly subject to duty at the rate of 11.5 per centum ad valorem under item 688.40, Tariff Schedules of the United States, which provides for electrical articles and electrical parts of articles. Plaintiffs' original claim under item 685.20, Tariff Schedules of the United States, was abandoned at the trial and is therefore dismissed.

The pertinent statutory provisions involved provide as follows:

| | | |
|---|---|---|
| 685.90 | Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof_____ | 17.5% ad val. |
| 688.40 | Electrical articles, and electrical parts of articles, not specially provided for_____ | 11.5% ad val. |

The record in this case consists of an article illustrative of the imported merchandise and the following stipulation:

> Mr. White: I also offer to stipulate that the articles in issue, illustrated by plaintiffs' exhibit 1, are electrical switches known as wave switches; that those articles are not dedicated to use with any particular article; that they are used in diversed electrical apparatus; that they have a limited capacity to carry electrical current; and, that the safe capacity of those articles is not more than ½ ampere; that the articles are used only in low current or low power circuits; and, that the articles are electrical articles.

This case after submission was suspended pending the decision in the case of *United States* v. *General Electric Company*, 58 CCPA 152, C.A.D. 1021, 441 F. 2d 1186 (1971).

Both parties rely upon and contend that the decision in the *General Electric* case, *supra*, is dispositive of this action. The merchandise in the *General Electric* case, *supra*, insofar as is pertinent herein consisted of jacks used for the connection of earphones in radios. They were classified under item 685.90, Tariff Schedules of the United States, as was the merchandise herein. The record therein established the jacks dealt with electricity only in the nature of signals or intelligence in an audio circuit. In that sense, the jacks acted as connectors or completed a circuit. In the decision in the *General Electric* case, *supra*, the Court of Customs and Patent Appeals made the following observations:

> On the basis of this testimony, the Customs Court concluded that the imported "jacks" constitute:

\* \* \* the means whereby the audio signal is carried to the earphones when the latter are inserted in the radio circuit. They are not designed to carry the loads of electrical power associated with the use of electric light and electric motors but rather are designed for the handling and transmission of audio signals. The \* \* \* jacks are imported for use in radios made by the General Electric Company.

With reference to the above-noted aspects, the court found the jacks in issue to be similar to the articles dealt with in *Midland International Corporation* v. *United States*, 62 Cust. Ct. 164, C.D. 3715 (1969). The holding in *Midland* was that the items enumerated in item 685.90 were intended for use in power circuits and did not cover items suitable for use only in low current audio circuits.

\*       \*       \*       \*       \*       \*       \*

Appellant argues that, since item 685.90 contains no express words limiting the application of the enumerated devices to "power" electrical circuits as distinguished from "audio" circuits, it was error for the court below to so construe the statue. In aid of this contention, appellant relies on dictionary definitions and certain encyclopedic, scientific and technological commentaries as well as the 1955 *Brussels Nomenclature* and explanatory notes relating thereto.

After a consideration of the language of item 685.90, the background materials cited in aid of construction of that item, and the arguments of counsel, we are not persuaded of reversible error in the decision of the Customs Court. We cannot agree with appellant's argument that rule 10(ij) requires that the provision of item 685.90 for "other electrical apparatus for making or breaking electrical circuits" must prevail over the provision for parts of radio reception apparatus in item 685.22. This is because we think the Customs Court was correct in its holding that the imported jacks, used in low current audio circuits, are not specifically provided for in item 685.90 since the items enumerated therein all relate to electrical power circuits.

We also think it pertinent to observe here that a seemingly broad descriptive tariff term is not to be taken as encompassing every article which may literally come within that term but rather only those articles of the type intended by Congress in enacting the TSUS. *United States* v. *Andrew Fisher Cycle Co.*, 57 CCPA 102, C.A.D. 986 (1970). The jacks in the present case are not, in our opinion, the type of article Congress intended to encompass by item 685.90.

The position of plaintiffs is that since the imported switches are used in low-current circuits, less than ½ ampere, they are excluded from item 685.90 by virtue of the decision in the *General Electric* and *Midland* cases, *supra*. The error in this reasoning is clearly apparent when the complete language of those cases is utilized. The distinction between power application and audio application was the

prime consideration therein. Audio circuits are of low-current application. However, the mere fact that a switch used in power circuits is rated at a ½ ampere does not remove it from the provision covering power applications. *Cf. United States* v. *Ampex Corp., et al.,* 59 CCPA 134, C.A.D. 1054 (1972).

The protests are therefore overruled.

Judgment will be entered accordingly.